UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT POON, | CASE NO. 2:06-CV-2582-DOC |
| **Plaintiff,** | |
| v. | **ORDER** |
| CALIFORNIA DEPARTMENT OF CORRECTIONS, ET AL. | |
| **Defendants.** | |

Plaintiff Albert Poon is a prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff's request to proceed in forma pauperis was granted on June 18, 2007. Also on June 18, 2007, Plaintiff was required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1).

Under 28 U.S.C. § 1915A, this Court must "review, before docketing . . . or . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the court [must] identify cognizable claims or dismiss . . . any portion of the complaint, if the complaint – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). This Court must therefore determine whether Mr. Smith's Complaint states a cognizable claim for relief with respect to each named

defendant.

On June 15, 2007, Judge Dale Drodz found that Plaintiff's complaint stated cognizable claims for relief against a number of named defendants. However, the Court dismissed Plaintiff's complaint at that time for failure to comply with Local Rule 15-20, which states:

> Unless prior approval to the contrary is obtained from the Court, every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by Court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading.

The Court then notified Plaintiff that he should either proceed on his original complaint without his supplement pleadings or file an amended complaint that incorporates all of his allegations. On June 22, 2007, Plaintiff filed such a declaration, notifying the Court that he was withdrawing his supplemental pleadings.

The Court has reviewed Mr. Poon's Amended Complaint and, for the foregoing reasons, determined that it is not cognizable.

**I. Legal Standard**

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizon*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1964 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, in order to survive a dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. In reviewing a complaint under this standard, the Court must

accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of 1983, if he does an affirmatives act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Finally, vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**II. Discussion**

In his complaint, Plaintiff has named as defendants the California Department of Corrections and Rehabilitation; Assoc. Warden C.D. Brown; Lt. G.B. Howerter; Lt. Robinson; K. Broadwater; K. Buckely; Sgt. Eric Da Rosa; Capt. C. Arthur; M.M. Lemus; Dr. Reinhart; Dr. Jason Rohrer; Dr. A. Traquina; J. Butler; Capt. C. Scavetta; S. Cervantes; Capt. R. Manuel; Capt. Janet D. Peters; Tom L. Carey; D.K. Sisto; N. Grannis; Roderick Hickman; Jeannie Woodford; James Tilton; and DOES 1-10 (collectively "Defendants"). Plaintiff sues Defendants both in their individual and official capacities for violating his

rights under the Eighth and Fourteenth Amendments.

Plaintiff has presented a detailed account of his experiences in prison, with his allegations centering around (1) the alleged use of a confidential informant, by Sgt.Da Rosa, to discover that Plaintiff's cell may contain a DVD player and (2) the fact that he was housed with a cell-mate, rather than in a single-man-cell, for a portion of his incarceration.

**A. Confidential Informant**

Allegedly pursuant to said information, Sgt. Da Rosa ordered the search of Plaintiff's cell, whereupon two inmate-manufactured weapons were discovered. Plaintiff attended an initial disciplinary hearing on April 24, 2003 at which time his cell-mate alleged pleaded guilty to possession of one of the two weapons discovered. Plaintiff told Lt. Sandy, the Sr. Hearing Officer at the hearing, what Sgt. Da Rosa had said about the involvement of a confidential informant. Lt. Sandy referred the case to Robinson, the officer in charge of Security and Investigation. The Senior Hearing Officer, Lt. Howerter, then instructed Correctional Officer Smith to escort Plaintiff back to his cell.

Plaintiff declined to proceed in his further, May 6, 2003 disciplinary hearing as he "[could] not present a plausible defense if they [wouldn't] admit that a confidential informant's information prompted Sgt. Da Rosa to order the search of [his] cell." Plaintiff was then found guilty in absentia of possession of both weapons.

On May 22, 2003, Plaintiff filed a Citizen's Complaint, accusing Sgt. Da Rosa, Lt. Howerter and Lt. Robinson of obstruction of justice. At an appearance before the Inmate Classification Committee, held on June 24, 2003, Plaintiff stated that he should not have been found guilty in absentia, as this violates Cal. Admin. Code Tit. 15, § 3320(g)(3) (§3320), which states:

> The inmate shall normally be present at a disciplinary hearing. When a disciplinary hearing is held without the inmate present, the reason for the absence shall be documented during the hearing on the CDC Form 115. The inmate shall be present at a disciplinary hearing unless:
>
> (1) A psychiatrist has determined that the inmate suffers from a serious mental disorder preventing the inmate's understanding of or participation in the hearing, and there is a compelling reason or

    need to proceed with the hearing.

  (2) The inmate was convicted of escape in court and has not been returned to the facility or jurisdiction from which the escape occurred.

  (3) The inmate has waived the right to be present in writing, or in the case of a refusal to sign a waiver, the refusal was witnessed by a custody officer, documented on a CDC Form 128-B (Rev. 4/74), and attached to the CDC Form 115 for review by the Senior Hearing Officer at the disciplinary hearing and by the Chief Disciplinary Officer following adjudication of the rules violation report.

Plaintiff states that upon stating that §3320 had been violated, "C.D. Brown gave [Plaintiff] a dirty look to shut him up." Subsequently, Plaintiff states that K. Broadwater proceeded to "exchange glances of satisfaction [with C.D. Brown] in mocking Plaintiff as he worked as a law clerk in the law library and knew more about the law than other inmates and the staff." Plaintiff further argues that staff at "CSP - Solano" have a pattern of finding inmates guilty in abstentia.

  On October 28, 2003, Plaintiff was allegedly informed by his court-appointed attorney, Mr. Oldwin, that "the prosecutor had admitted that there's indeed a confidential informant who informed Sgt. Da Rosa that they would find a DVD player in Plaintiff's cell, but the information does not relate to any weapons." Plaintiff's preliminary hearing then proceeded and Plaintiff states that he and his cell-mate were "bound over for trial." Plaintiff was then placed in ad seg, after which he filed a letter with the warden, complaining that "C.D. Brown had a personal vendetta against him." Plaintiff states that C.D. Brown proceeded to abuse authority by granting his cell-mate a new disciplinary hearing after his cell-mate plead guilty to possession of one of the weapons found in their cell, while not granting Plaintiff a new hearing.

  Plaintiff filed a Petition for Writ of Habeas Corpus in the State Court of Appeals in July 2003 in order to "have his guilty finding in the disciplinary action invalidated." Plaintiff's habeas petition was denied. Plaintiff goes on to discuss two 2004 motions to "discover confidential informant", which he says was denied "based on the [prosecutor's] assertion that an informant did not exist." Additionally, on

September 24, 2004, Plaintiff allegedly filed a Motion for Discovery, in which he "accused the purported snitch planted the weapon by the door before he informed Sgt. Da Rosa that he would find a DVD player in Plaintiff's cell." Plaintiff avers that the trial judge "ordered the D.A.'s office to conduct a thorough investigation into Plaintiff's allegations," which lead the D.A.'s Office to "finally admit[] that an informant prodded Sgt. Da Rosa to search Plaintiff's cell for a DVD player." Subsequently, "the criminal case against Plaintiff was [] dismissed on January 11, 2005."

**B. Cellmate**

Plaintiff goes on to discusses various ailments and stresses allegedly inflicted on him by the presence of his former cell-mates, such as panic attacks, increased blood pressure, exposure to tuberculosis and exposure to second-hand smoke. He states that, while at New Folsom State Prison, he spent seven days with a cell-mate who was a "young gang-banger who was trying hard to bully Plaintiff." The "gangbanger" was moved out of his cell by a counselor named Mr. Rivas. Next, he was housed with a cell-mate who allegedly kept "something like a cutter" in his cell. Allegedly as a result of arguing with his cell-mate to get rid of the cutter, Plaintiff was taken to Folsom Mercy Hospital and treated for several hours due to an alleged panic attack. This allegedly led him to be placed in single-man-cell status on July 26, 2006 until August 3, 2006 when, pursuant to an ICC meeting, Plaintiff was removed from single-cell status. Plaintiff was seen by several physicians regarding his alleged anxiety, with J. Butler CC II ultimately deciding – after reviewing his medical history – to recommend that his appeal to be put back on single-man-cell status be denied. Plaintiff states that although his mental case manager, Lee Johnson, found him eligible for single-man-cell status on November 30, 2006, he was not placed back on single-cell status.

The Court has reviewed Mr. Smith's Complaint and determined that it does not state a cognizable claim for relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b) against any Defendants. Plaintiff alleges that the various Defendants named in this violated one or more portions of the U.S. Constitution (*i.e.*, the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment's prohibition of cruel and unusual punishment, the Equal Protection Clause of the Fourteenth Amendment) in committing the aforementioned acts. However, even if all of the alleged facts are taken as true for purposes of the instant review, Plaintiff's claims fail.

Not only has insufficient evidence been presented to support this allegation, but the criminal case

against Plaintiff (regarding the weapon found in his cell) was dismissed four years ago and, further, the decision not to disclose use of an informant to determine whether and when to search a cell does not, as a matter of law, amount to a cognizable due process violation. Stated differently, the secret use of a confidential informant to determine that Plaintiff's cell might contain a DVD player does not rise to the level of a Due Process Clause violation under the test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976)(holding that courts should weigh the following three factors in determining the amount of process due: (1) the interests of the individual in retaining their property, and the injury threatened by official action; (2) the risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; and (3) the costs and administrative burden of the additional process, and the interests of the government in efficient adjudication).

Furthermore, Plaintiff has not made the requisite initial showing, in order to make out a viable claim under the 8th Amendment, that he was incarcerated under conditions posing substantial risk of serious harm. *See Rhodes v. Chapman,* 452 U.S. 337, 347 - 48 (1981)(finding double celling not to violate the Eighth Amendment where it did not lead to "deprivations of essential food, medical care, or sanitation" nor "increase violence among inmates or create other conditions *intolerable* for prison confinement")(emphasis supplied). "[Prison] conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. *Id*. at 347. However, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

Finally, Plaintiff's claim that his right to equal protection was violated due to the fact that inmates housed without cell-mates do not "have to endure this kind of mental anguish" is without merit. The class of persons housed with cell-mates has not been held to be a protected class by the Supreme Court. As follows, this classification is subject to rational basis review, wherein the test for constitutionality is whether the prison's cell housing policy is "reasonably tailored to achieve [the State's legitimate] ends." *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 85(1988)(citing *Lindsey v. Normet*, 405 U.S. 56, 70 (1972)). Housing prisoners with other inmates is certainly reasonable tailored to achieve the legitimate ends of coping with a large number of inmates and a limited number of cells.

### III. Outcome

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's Complaint is DISMISSED with prejudice as to all Defendants.

DATED: May 18, 2009

                                                  *David O. Carter*
                                                  DAVID O. CARTER
                                                  United States District Judge
                                                  Sitting by Designation